William **WATERS** and Donald Samuels, each individually and on behalf of all others similarly situated, Plaintiffs,

v.

**WISCONSIN STEEL WORKS OF INTERNATIONAL HARVESTER COMPANY**, a corporation, and United Order of American Bricklayers and Stone Masons, Local 21, an unincorporated association, Defendants,

United States Equal Employment Opportunity Commission, Amicus Curiae.

**No. 68 C 2483.**

United States District Court
N. D. Illinois, E. D.
July 14, 1969.

Judson H. Miner, Chicago, Ill., for plaintiffs.

Hammond E. Chaffetz, Thomas M. Thomas and George D. Newton, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for Wisconsin Steel Works of International Harvester Co.

Benjamin L. Jacobson and Marvin Gittler, Chicago, Ill., for United Order of American Bricklayers and Stone Masons, Local 21; Asher, Greenfield, Gubbins & Segall, Chicago, Ill., of counsel.

David Copus, Washington, D. C., for United States Equal Employment Opportunity Commission.

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

ROBSON, District Judge.

The defendants in this class action have moved to dismiss or, in the alternative, for summary judgment. The Equal Employment Opportunity Commission (EEOC) requested and was granted leave to file a brief as a friend of the court. For the reasons set forth below, this court is of the opinion that the motions to dismiss should be granted.

Plaintiff William Waters, a Negro bricklayer, was a probationary employee of the defendant Wisconsin Steel Works of International Harvester Company (Company) from July 13, 1964, to September 11, 1964, and from March 20, 1967, to May 19, 1967. He was offered a position again on August 30 or 31, 1967, but he declined the offer. On September 16, 1964, Waters filed a complaint against the Company with the President's Committee on Equal Employment Opportunity. The complaint

was dismissed on March 1, 1965. Plaintiff Donald Samuels, also a Negro bricklayer, has never been employed by the Company, but on April 3, 1966, he submitted an application for employment. On May 20, 1966, the plaintiffs filed charges against the Company with the Illinois Fair Employment Practices Commission (FEPC), alleging that the Company had discriminated against them. The Illinois FEPC dismissed these charges on August 17, 1966, for lack of substantial evidence. In accordance with Title VII of the 1964 Civil Rights Act, the plaintiffs filed charges with the EEOC against the Company within 30 days after the dismissal by the Illinois FEPC. 42 U.S.C. § 2000e et seq. On February 16, 1967, the EEOC found that there existed no reasonable cause to believe that the Company had violated Title VII. On June 14, 1967, the EEOC granted plaintiff Water's request for reconsideration. The EEOC, on July 10, 1968, withdrew its previous "no cause" finding and issued a new decision that the Company had violated Title VII of the 1964 Civil Rights Act by a discriminatory recall of three white bricklayers in June and July, 1966, and January, 1967. The EEOC notified the plaintiffs that its conciliation efforts with the Company had been fruitless and advised them to proceed in a federal district court.

The plaintiffs filed the instant complaint in this court on December 27, 1968, against both the Company and Local 21 of the United Order of American Bricklayers and Stone Masons (Union).[1] The plaintiffs here allege that the defendants practice a racially discriminatory seniority system. Three statutes are invoked by the plaintiffs to support this court's jurisdiction: Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and Sec-

tion 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). Each of these statutes will be treated in turn.[2]

## THE CIVIL RIGHTS ACT OF 1866

■ Section 1 of the Civil Rights Act of 1866 provides that

"[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.

The question whether state action must be alleged to sustain a claim under Section 1981 is presently unsettled. Prior to the Supreme Court's decision in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), a showing of state action was vital to such a claim. E. g., Civil Rights Cases (United States v. Stanley, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883)); Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 92 L. Ed. 1187 (1948). In *Jones, supra,* it was first held that Section 1982, barring discriminatory practices in real estate dealings, applied to private as well as state action. The *Jones* decision was foreshadowed by earlier decisions which prohibited racial restrictions on the sale of property. Hurd v. Hodge, *supra*; Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L. Ed. 149 (1917). There is no similar trend of decisions applying the provision under consideration here, Section 1981, to the actions of private parties. The likelihood that the Supreme Court will not extend Section 1981 to private em-

---

1. Both plaintiffs were at one time members of the defendant Union.

2. The plaintiffs have withdrawn their argument that the National Labor Relations Act, 29 U.S.C. § 151 et seq., also supports this court's jurisdiction, since exclusive jurisdiction under that act is vested in the National Labor Relations Board.

ployment contracts is evidenced by the enactment of Title VII of the Civil Rights Act of 1964. Title VII expressly forbids racial discrimination in hiring by private employers and provides more definitive remedies than would be available even if Section 1981 were made applicable to private action. By providing such complete relief under Title VII, Congress did not anticipate the development of a then nonexistent and redundant remedy under Section 1981. An expansionist interpretation of Section 1981 would add little to the protection of private employment contracts from racial discrimination that is not already available under Title VII and would ignore the apparent congressional intent that Title VII be the exclusive enforcement procedure against discrimination in employment contracts. To now apply Section 1981 unnecessarily to employment contracts would create a body of law independent from and in potential conflict with the detailed congressional scheme regulating employment embodied in Title VII. Therefore, this court concludes that it does not have jurisdiction over this matter by reason of the Civil Rights Act of 1866.

■ This court observes, however, that even if it did have such jurisdiction, the action would be barred as untimely. Federal courts are required to apply to suits under Section 1981 the limitation period applicable to the most analogous claim under state law. Hileman v. Knable, 391 F.2d 596 (3rd Cir. 1968); Mulligan v. Schlachter, 389 F.2d 231 (6th Cir. 1968); Jones v. Jones, 410 F.2d 365 (7th Cir. March 5, 1969). An action alleging discriminatory employment practices under Section 1981 is most analogous to a claim under the Illinois Fair Employment Practices Act, which contains a mandatory 120-day filing period.[3] Ill.Rev.Stat.1967, ch. 48, §

858. Indeed, the plaintiffs here previously filed charges concerning the subject matter of this complaint with the Illinois FEPC. The practices complained of occurred on specific dates during the years of 1964, 1966 and 1967. The complaint was filed on December 27, 1968. Therefore, even if this court had Section 1981 jurisdiction, the claim would be barred.

## THE CIVIL RIGHTS ACT OF 1964

The Union has moved to dismiss the complaint insofar as it asserts Title VII of the 1964 Civil Rights Act as the basis of this court's jurisdiction, on the ground that the Union was not named in the underlying charge before the EEOC. The Company, named in the EEOC. charge, agrees and moves to dismiss for failure to join an indispensable party under Rule 19, Federal Rules of Civil Procedure.

■■ In their claim under Title VII, the plaintiffs seek injunctive relief against both the Company and the Union to prohibit enforcement of existing seniority provisions in their collective bargaining agreement, to require publication by both defendants of job openings, to "restructure" the existing seniority system established by their collective bargaining agreement, and to give the plaintiffs seniority over all other bricklayers hired since the date of the alleged acts of discrimination. Under such circumstances, both the Union and the individual bricklayers whose seniority might be adversely affected must be before the court. Title VII provides that "a civil action may * * * be brought against the respondent named in the charge * * * by the person claiming to be aggrieved." 42 U.S.C. § 2000e-5(e). A party not brought before the EEOC, such as the Union here, cannot be sued in a Title VII action in a

---

3. Filing periods which are conditions precedent to suit are often referred to as statutes of limitation. For example, the limitation period in the Federal Employers' Liability Act is referred to as a statute of limitations even though it is a

condition precedent to recovery. Wabash Ry. Co. v. Bridal, 94 F.2d 117, 121 (8th Cir. 1938). See also Carpenter v. Erie R. Co., 132 F.2d 362 (3rd Cir. 1942); Reat v. Illinois Cent. R. R. Co., 47 Ill. App.2d 267, 197 N.E.2d 860 (1964).

federal court. Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Freese v. John Morrell & Co., CCH Empl.Prac. ¶ 9231 (60 Lab.Cas.) (S.D. Iowa 1966). In *Miller*, the court expressly held that

> [t]his circuit has already made clear —as we have reiterated in this opinion—that charging parties cannot bypass the EEOC. Therefore, *if charges of employment discrimination have not been filed against the union, the appellants' [plaintiffs] right to file suit against the unions has not ripened.* 408 F.2d at 291. (Emphasis supplied.)

Therefore, this court finds that joinder of the Union as a party to the proceeding brought by the plaintiffs before the EEOC is a condition precedent to joining the Union in the present case. The plaintiffs having failed to do so require dismissal of the Title VII claim against the Union. Consequently, the plaintiffs' claim against the Company must also be dismissed because the Union and the bricklayers who would be adversely affected in this case are parties "needed for just adjudication" under Rule 19.

### THE LABOR MANAGEMENT RELATIONS ACT

■■ The complaint alleges that the plaintiffs were injured by a "direct violation" of the collective bargaining agreement between the Company and the Union, in violation of Section 301(a) of the Labor Management Relations Act. A prerequisite to suit under Section 301(a) is that an employee at least attempt to exhaust exclusive grievance and arbitration procedures established in the bargaining agreement. Vaca v. Sipes, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967); Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Ford v. General Electric Co., 395 F.2d 157 (7th Cir. 1968). The plaintiffs have not even attempted to follow the grievance procedures established by the contract. They have not filed a grievance with the Company, nor have they demanded that the Union represent them in any grievance procedure. The complaint is therefore fatally defective under Section 301(a) since it does not contain an allegation that a formal effort to pursue contractual or administrative remedies would be "absolutely futile." Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

It is therefore ordered that the defendants' motions to dismiss be, and they are hereby granted, and the cause is hereby dismissed.