**Marilyn SMITH, Plaintiff,**

v.

**Margaret WENDELL, M. D., Psychiatrist, formerly of Haverford State Hospital, presently of Child Guidance and Mental Health Clinic, et al., Defendants.**

**Civ. A. No. 74-2779.**

United States District Court,
E. D. Pennsylvania.

Feb. 28, 1975.

David Ferleger, Mental Patient Civil Liberties Project, Philadelphia, Pa., for plaintiff.

James Lewis Griffith, Charles B. Burr, II, Obermayer, Rebmann, Maxwell & Hippel, Richard W. Hollstein, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VAN ARTSDALEN, District Judge.

Plaintiff, Marilyn Smith, instituted this civil rights action against certain members of the staff of the Haverford

State Hospital, Haverford, Pennsylvania. The complaint alleges that plaintiff was unlawfully confined at the Haverford State Hospital from December 9, 1972 to December 13, 1972 and that during her confinement she was denied medical treatment. The defendants have filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Several bases are alleged. First, the allegations concerning unlawful confinement are barred by the statute of limitations. Second, the allegations concerning medical treatment do not state a claim for relief under the civil rights act. Third, the defendants are immune from liability for damages under the civil rights act. Defendants' contentions will be addressed seriatim.

## STATUTE OF LIMITATIONS—CONFINEMENT ALLEGATIONS

■ ■ The civil rights act, under which plaintiff's action is brought, contains no limitation provision. It is well settled, however, that in civil rights actions federal courts are to apply the same limitation period which would be applied by state courts if the action were brought in state court under state law. Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974); Howell v. Cataldi, 464 F.2d 272, 277 (3d Cir. 1972); Butler v. Sinn, 423 F.2d 1116, 1117 (3d Cir. 1970). Pennsylvania applies a one year statutory period for false arrest actions, Pa.Stat. tit. 12 § 51, and a two year statutory period for false imprisonment actions, Pa.Stat. tit. 12 § 34. Defendants take the position that plaintiff's allegations concerning unlawful confinement are inextricably intertwined with an unlawful arrest and that under Pennsylvania law the statute of limitations for false arrest would therefore be applied to this aspect of plaintiff's claim. Since the instant complaint was not filed until October 24, 1974, defendants argue that the unlawful confinement claims are barred by the one year statute. Plaintiff posits that the allegations of unlawful confinement are not inextricably intertwined with an unlawful arrest and therefore the two year statutory period for false imprisonment would be applied. Under the two year statutory provision, plaintiff's confinement claims are not barred.

In support of their contention, defendants rely primarily on the Pennsylvania decision of Gagliardi v. Lynn, 446 Pa. 144, 285 A.2d 109 (1971). In that case, the borough mayor had directed a borough police officer to arrest plaintiff for noncompliance with a borough construction ordinance. Pursuant to the mayor's directive, the plaintiff was arrested and imprisoned. Suit was thereafter instituted against the mayor and the arresting officer for false imprisonment. The Pennsylvania Supreme Court, however, refused to apply the two year limitation period for false imprisonment holding that

> [w]here false imprisonment is the wrong declared upon and where, as here, that confinement is inextricably intertwined with an unlawful arrest, the statute of limitations which governs the action is that relating to a false arrest.

*Id.* at 150, 285 A.2d at 112.

An examination of the facts in the instant case, as alleged in plaintiff's complaint, reveals several differences between this case and *Gagliardi.* Plaintiff's complaint avers that on December 9, 1972, she was voluntarily admitted to Bryn Mawr Hospital for treatment of a nervous condition. Later that day at Bryn Mawr Hospital, she was informed that she was being sent to Haverford State Hospital on an emergency committal under Section 405 of the Mental Health and Mental Retardation Act of 1966. Pa.Stat. tit. 50 § 4405. The complaint does not specify which person or persons at Bryn Mawr Hospital made the decision to transfer plaintiff to the Haverford State Hospital nor does it specify which person or persons actually transferred plaintiff to that institution. In any event, though, the complaint indicates that plaintiff was in fact transferred to the Haverford State Hospital

and remained confined there until December 13, 1972. The defendants are all members of the Haverford State Hospital staff and the gravamen of the confinement claim against them is that they acted without legal authority and in violation of Section 405 in accepting and retaining plaintiff as a transfer patient from Bryn Mawr Hospital under Section 405's emergency commitment provisions.

Plaintiff does not seek to impute to the instant defendants the acts of the person or persons at Bryn Mawr Hospital who actually made the decision to transfer plaintiff and who actually placed plaintiff in custody and transferred her to the Haverford State Hospital. These acts, which would presumedly constitute an "arrest" under Pennsylvania law,[1] are not the subject of the instant litigation. The person or persons who actually "arrested" plaintiff at Bryn Mawr Hospital are neither named as defendants in this lawsuit nor identified in the complaint. The instant suit solely concerns the subsequent acts of confinement at the Haverford State Hospital by the Haverford State Hospital Staff.

In this regard, the case is significantly different from *Gagliardi*. That case involved a claim of unlawful confinement against the person who had actually ordered the arrest of the plaintiff and the person who had actually taken the plaintiff into custody. The Pennsylvania Supreme Court there held that the acts of the defendants in "arresting" the plaintiff were inextricably intertwined with the subsequent confinement and thus the limitation period for false arrest had to govern the confinement claim. Here, however, the persons who actually arrested plaintiff are not sued. Only the persons who subsequently confined plaintiff are charged and only their acts are involved in this lawsuit.

For this reason, the instant case is similarly distinguishable from Martell v. Chisholm, 384 F.Supp. 1224 (W.D.Pa. 1974), which followed the result in *Gagliardi* in a case involving a claim of false imprisonment in connection with a civil court commitment under Section 406 of the Pennsylvania Mental Health and Mental Retardation Act of 1966, Pa.Stat. tit. 50 § 4406. In that case the plaintiff had brought suit against (a) the counselor who had filed the Section 406 commitment petition; (b) the Common Pleas Judge who issued the order directing that plaintiff be taken into custody; (c) the sheriff who directed his deputy to execute the court order; (d) the deputy who actually took plaintiff into custody and delivered him to the hospital and (e) the hospital which subsequently detained plaintiff. The court found that plaintiff had so inextricably bound all of the elements of his claim that severance of the subsequent confinement from the preceding arrest was not warranted for purposes of the statute of limitations and, therefore, the limitation period for false arrest had to be applied to plaintiff's claim.

As previously noted, plaintiff's claim in the instant case only involves those persons who subsequently confined plaintiff and their acts of confinement. I therefore conclude that under the particular circumstances of this case, plaintiff's claim of unlawful confinement is not so inextricably intertwined with a preceding arrest so as to mandate application of the limitation period for false arrest in lieu of the usual limitation period for false imprisonment. Applying the two year limitation period for false imprisonment, plaintiff's claim of unlawful confinement is not barred.[2]

---

1. In *Gagliardi*, the Pennsylvania Supreme Court quoted with approval Section 112 of the Restatement of Torts 2d which defines "arrest" as

   the taking of another into the custody of the actor for the actual or purported purpose of bringing the other before a court, or of otherwise securing the administration of the law.

Arrest is a privilege, and if the conditions of the privilege are not met, the arrest is unlawful, or "false." *Gagliardi, supra* at 148, n. 3, 285 A.2d at 111.

2. It is not contended that plaintiff's other claims involving medical treatment at the Haverford State Hospital are barred by the statute of limitations. As to those claims

## MEDICAL TREATMENT CLAIMS

■ Defendants argue that plaintiff's claims concerning the medical treatment she received at the Haverford State Hospital are solely claims of medical malpractice and, therefore, fail to state valid claims upon which relief can be granted under the civil rights act. Although claims of mere negligent medical treatment are not cognizable under the civil rights act, Gittlemacker v. Prasse, 428 F.2d 1, 5–6 (3d Cir. 1970); Church v. Hegstrom, 416 F.2d 449, 450–451 (2d Cir. 1969), the deliberate denial of necessary medical treatment to a person held in state custody is actionable. Martinez v. Mancusi, 443 F.2d 921, 923–925 (2d Cir. 1970); Newsome v. Sielaff, 375 F.Supp. 1189, 1193 (E.D. Pa.1974); United States ex rel. Ingram v. Montgomery County Prison Board, 369 F.Supp. 873, 874–875 (E.D.Pa.1974).

■ In the instant case, plaintiff alleges that throughout her confinement at the Haverford State Hospital, she was repeatedly denied prescribed medication for a known heart ailment and was repeatedly denied medical attention despite numerous requests and complaints of chest pains and other heart attack symptoms. It is further alleged that on the evening of December 12, 1972, plaintiff informed certain staff members that she was having a heart attack and requested treatment and medication. These requests were refused. The following morning plaintiff was found gasping for air and suffering a pulmonary embolism. Later that day, December 13, 1972, plaintiff was taken to Lankenau Hospital where she remained in the intensive care unit for five days.

These allegations are not, as defendants contend, solely claims of negligent medical treatment. Plaintiff has alleged the repeated denial of medical treatment and these allegations, which are accepted as true for purposes of this motion, state valid claims upon which relief may be granted under the civil rights act. The motion to dismiss these claims must, therefore, be denied.

In her complaint, plaintiff has also alleged a cause of action for medical malpractice under state law. It is unclear, however, whether plaintiff is relying on the same facts to support this claim as were stated in support of the denial of medical treatment claim or whether further acts of the defendants are involved. Until the plaintiff more precisely defines the specific factual basis for her medical malpractice claim, any decision as to possible pendent jurisdiction over the state claim must be deferred.

## IMMUNITY

■ Defendants finally contend that they are immune from damage liability in this case because all of the actions purportedly taken by them were discretionary in nature and were performed in their governmental capacities. No affidavits or other documentation have been submitted by defendants in support of this contention. The present record is devoid of any information setting forth the exact nature of the defendants' respective positions and the scope of their authority. It has been repeatedly affirmed that it is error for the district courts to decide a claim of governmental immunity before the above facts have been fully presented and developed in the record. Scheuer v. Rhodes, 416 U.S. 232, 249–250, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fidtler v. Rundle, 497 F.2d 794, 801–802 (3d Cir. 1974); Safeguard Mutual Insurance Co. v. Miller, 472 F.2d 732, 733–734 (3d Cir. 1973); Lasher v. Shafer, 460 F.2d 343, 348 (3d Cir. 1972). The present record is entirely insufficient to support a finding of governmental immunity and the motion to dismiss on the basis of immunity must therefore be denied.

the two year limitation period of Section 34, which governs all suits for injury wrongfully done to the person, Pa.Stat. tit. 12 § 34, applies and these claims were filed within that two year period.